IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PARTS PLUS OF NEW MEXICO, INC.
AND SAMUEL E. HONEGGER, LLC,

    Plaintiffs,

v.   No. 20-cv-0675 SMV/SCY

TRI-STATE INSURANCE COMPANY
OF MINNESOTA,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on "Defendant Tri-State Insurance Company of Minnesota's Motion for Partial Summary Judgment" ("Motion") [Doc. 45], filed on July 8, 2022. Plaintiffs responded on August 22, 2022. [Doc. 49]. Defendant replied on September 6, 2022. [Doc. 50]. Having considered the briefing and relevant law, and being fully advised in the premises, the Court will grant the Motion and dismiss Counts II and III of the Amended Complaint.

### BACKGROUND

This is a first party insurance coverage dispute concerning alleged hail damage to the roof of Plaintiffs' commercial property. Defendant insured the property from October 1, 2017, to October 1, 2018. Plaintiffs claim that the property suffered hail damage sometime during that period.[1] Plaintiffs retained a public adjuster, C3 Group, to investigate the cause and extent of the damage. [Doc. 45-15] at 2. C3 Group began its investigation no later than October 21, 2019. *Id.*

---

[1] The date of loss has changed over time. First it was May 21, 2018, [Doc. 45-15] at 2. Later it changed to July 30, 2018. *Id.* at 3. Regardless, the alleged date of loss was within the policy period.

C3 Group determined that the damage was caused by hail and submitted their estimate of the repair costs to Plaintiffs no later than February 28, 2020. [Doc. 45-16] at 2. Plaintiffs submitted the claim to Defendant on March 23, 2020. *See* [Doc. 45-4] at 13.

Defendant acknowledged receipt of the claim two days later. [Doc. 45-7]. Defendant hired an engineer, Jim Koontz, and an independent adjuster, Julie Kirsch, to investigate the claim. [Docs. 45-8, 45-13]. Koontz and Kirsch inspected the property on April 23, 2020, accompanied by a representative from Plaintiffs' "Roofer of Preference," and Matt Behrens, a representative of C3 Group. [Doc. 45-9] at 3–5. Koontz examined the building interior and the roofs. He took numerous photographs, collected samples of the roofing material for laboratory analysis,[2] and reviewed meteorological data from before and after the alleged date of loss. *Id.* at 4–8. He submitted his 125-page report to Defendant's in-house adjuster, Jim Amato, on May 6, 2020. *Id.* at 3. Based on the meteorological data, Koontz concluded that there had been no "hail event" at the property on the alleged date of loss. *Id.* He further concluded that the roof was not damaged by hail, but rather by "long term UV exposure, improper installation, manufacturing defects and improper maintenance." *Id.* at 9.

The policy contains a suit limitation clause requiring any suit against Defendant to be brought "within 2 years after the date on which the direct physical loss or damage occurred." [Doc. 45-6] at 120. Plaintiffs filed suit on May 20, 2020, one day before that provision would have taken effect. [Doc. 1-3] at 2. Two days later, on May 22, 2020, Defendant denied the claim on the grounds that the claimed damages were excluded from coverage because they resulted from

---

[2] Koontz asked Behrens to select the samples from areas which he believed represented hail damage. [Doc. 45-9] at 5.

"faulty, inadequate or defective construction, materials, and maintenance; wear and tear; and deterioration." [Doc. 45-14] at 2; [Doc. 45-17] at 2.

## LEGAL STANDARDS

Summary judgment eliminates factually unsupported claims and defenses. *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1144 (D.N.M. 2010). Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way,' and it is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Montoya v. Loya Ins. Co.*, No. 18-cv-0590 SCY/JFR, 2019 WL 5457081, at *6 (D.N.M. Oct. 24, 2019) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *Id.* Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

Although the Court construes the facts and inferences drawn from the record before it in the light favoring the non-movant, "[e]ven under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988). The question in a case for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252.

New Mexico recognizes a duty of good faith and fair dealing between the insurer and the insured. *Salopek v. Zurich Am. Life Ins. Co.*, 446 F. Supp. 3d 886, 903 (D.N.M. 2020). "Fair dealing is the obligation to act honestly and in good faith in the performance of the contract." *Id.* (quoting New Mexico Uniform Jury Instruction 13-1701). "An insurer acts in bad faith when its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Hauff*, 755 F. Supp. 2d at 1145 (internal quotations marks omitted). "Frivolous or unfounded" means "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18. "Unfounded" is not analogous to "incorrect" or "erroneous." *Id.*; *see also Hauff*, 755 F. Supp. 2d at 1145 ("Liability cannot rest on a merely erroneous or incorrect refusal."). Rather, unfounded "means essentially the same thing as reckless disregard, [where] the insurer *utterly* fails to exercise care for the interests of the insured in denying or delaying payment" under the policy. *Sloan*, 2004-NMSC-004, ¶ 18 (internal quotation marks omitted).

The New Mexico Unfair Insurance Practices Act ("UIPA") prohibits unfair or deceptive insurance actions. *Hauff*, 755 F. Supp. 2d at 1148 (citing N.M. Stat. Ann. § 59A–16–20 (1978)). "An insurer violates the Act when it does not attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." *Id.* (internal quotation marks omitted). However, the UIPA does not "require insurers to settle cases they reasonably believe to be without merit or overvalued." *Id.* (quoting *Hovet v. Allstate Ins. Co.,* 89 P.3d 69, 78 (2004)). Thus, an insurer "need not fear liability" if it objectively exercises good faith and fairly attempts to reasonably and timely settle its cases. *Id.*

4

## ANALYSIS

Plaintiffs claim that Defendant committed bad faith in several ways. [Doc. 45] at 8, 9. First, they contend that Defendant delayed investigating the claim. *Id.* Second, they argue that Defendant compelled them to file a lawsuit to recover policy proceeds. *Id.* Third, they assert that Defendant failed to conduct a reasonable investigation of the claim. *Id.* Finally, they allege that Defendant misrepresented facts or policy provisions regarding coverage and failed to give a reasonable explanation for its denial of coverage. *Id.*[3]

### I. Plaintiffs fail to show a genuine issue of material fact that Defendant delayed investigating Plaintiffs' claim.

An investigation may be untimely and unfair when there is an "unreasonable delay in notification, timely evaluation and timely payment." *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶23, 453 P.3d 1235, 1242–43. The Court finds that Defendant's investigation was timely as a matter of law. Defendant acknowledged receipt of the claim on March 25, 2020, two days after it was submitted. [Doc. 45-7]; *see* [Doc. 45-4] at 13. Kirsch promptly coordinated with C3 Group to schedule an inspection of the property. [Doc. 45-8]. Koontz and Kirsch inspected the property on April 23, 2020 (approximately one month after Defendant received notice of the claim), and Koontz issued his report on May 6, 2020. [Doc. 45-9]. Plaintiffs received the report and claim denial on May 22, 2022. [Doc. 45-17]. The Court finds that the two-month period between Plaintiffs submitting their claim and Defendant's denial of coverage is reasonable as a

---

[3] The Court notes that both Plaintiffs and Defendant include lengthy lists of allegedly disputed and undisputed material facts, respectively. The Court will not address each individual fact but instead will holistically address the category of claims relevant to those facts.

matter of law.[4] *See Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996) (holding that three months to evaluate a claim after the court determined liability "was hardly a delay and certainly not in bad faith"); *Salopek*, 446 F. Supp. 3d at 896 ("Nothing in the record or in the law suggests that four months is an unreasonable period in which to investigate this claim.").

## II. Plaintiffs fail to show a genuine issue of material fact that Defendant compelled them to institute litigation to recover policy proceeds.

Plaintiffs argue that Defendant violated UIPA § 59A-16-20(G), which prohibits "compelling insureds to institute litigation to recover amounts due under a policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered." [Doc. 49] at 22. This argument is undeveloped at best. Plaintiffs recite a litany of non-material facts[5] to craft a conclusory argument that they were compelled to file suit. *See id.* at 23. But Plaintiffs submitted their claim two months before the suit limitations clause would have barred the claim.[6] Their decision to preserve the claim by filing this lawsuit does not tend to show that Defendant forced them to litigate. The Court is not persuaded that Plaintiffs have presented any genuine issue of material fact on this point.

---

[4] Plaintiffs' allegations that Defendant intentionally delayed denying the claim until after the suit limitations period ran are entirely conclusory, and thus, the Court will not consider them. Suffice it to say that Plaintiffs offer no evidence to support their theory.

[5] For example, Plaintiffs state that "Parts Plus…is a family-owned …company founded in 1981." [Doc. 49] at 5. In what sense is that material to Defendant's Motion for Summary Judgment? Likewise, how is it material that Plaintiffs had made no prior claims for weather-related issues at the property? *Id.*

[6] The Court notes that Plaintiffs argue that Defendant acted in bad faith by taking two months to evaluate the claim, while their own adjuster took twice as long.

### III. Plaintiffs fail to show a genuine issue of material fact that Defendant did not conduct a reasonable investigation.

"[A]n insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage [, which] flows from a reasonable investigation of the claim." *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 13 (internal citations omitted). The investigation does not need to be perfect but simply "reasonably appropriate under the circumstances." *Id.* A reasonable basis includes considering conflicting information. *Salopek*, 446 F. Supp. 3d at 906. To reiterate, a reasonable but wrong position in denying a claim does not establish the elements of bad faith. *Id.* On the contrary, an insurer is liable for bad faith when the insurer "lack[s] a founded belief," which "is absent when the insurer fails to undertake an investigation adequate to determine whether its position is tenable." *Cleveland*, 2013-NMCA-013, ¶ 13.

The Court is not persuaded by Plaintiffs' arguments. Plaintiffs suggest that Defendant should have explored several avenues of investigation beyond those undertaken by Koontz. *See* [Doc. 49] at 18–21. However, even if additional investigation had yielded information favorable to them, Plaintiffs fail to show how that information would render Defendant's investigation frivolous or unfounded. *See Salopek*, 446 F. Supp. 3d at 906 (insurer does not commit bad faith by considering conflicting information in denying a claim).

Plaintiffs argue that "Defendant failed to quantify the full extent of covered losses under the Policy, even though it knew… that at least some damage was covered." [Doc. 49] at 18. This argument is based on the fact that Koontz's inspection revealed undisputed hail damage to some soft metal vents on the roof. *See id.* Plaintiffs argue that Defendant acted in bad faith because it "never prepared an estimate to determine what the cost would be to repair the [vents], even though

7

Defendant admits that once there is covered damage, the insurance company is to look at the scope of the damage." *Id*. at 19. But Defendant's corporate representative, Ms. Addus, testified that no estimate was prepared because the damage to the vents would have been less than the Plaintiffs' $25,000 deductible. [Doc. 49-5] at 17. Plaintiffs offer no evidence to rebut that testimony. Their argument is simply that it was bad faith not to prepare an estimate for damages that would not have been recoverable under the policy. The argument is strained at best.

Plaintiffs' argument based on Defendant's quick rejection of the Proof of Loss is equally unpersuasive. A proof of loss is a formal document that summarizes the insured's claimed damages. The insurer provides the form to the insured, which the insured must submit within a certain time limit. In this case, the Policy provides:

> You must see that the following are done in the event of loss or damage to the Covered Property: . . . Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

[Doc. 45-6] at 104, 105.

The proof of loss submission usually triggers a deadline for the insurer to accept or deny the claim. In this case, the Policy provides, "[w]e will give you notice of our intentions within 30 days after we receive the sworn proof of loss." *Id.* at 105.

It is undisputed that Defendant sent Plaintiffs a proof of loss form, although the date it was sent is unclear. [Doc. 49-5] at 12. However, there is a dispute over whether Defendant "requested" that the Plaintiffs fill out and submit the form. *See id.* When Ms. Addus was asked at her deposition, "Did Tri-State request that the insured complete a proof of loss?", she testified, "No. At the time, we sent a form to the insured." *Id*. Plaintiffs take the position that sending the form was a "request" from the insurer under the policy, thus triggering Plaintiffs' 60-day deadline to submit the form

8

and, in turn, Defendant's 30-day deadline to notify Plaintiffs of its "intentions." *See* [Doc. 49] at 20.

No doubt anticipating such an argument, Mr. Amato responded two days after the form was submitted:

> Please be advised that we are rejecting your Sworn Statement in Proof of Loss [in addition to C3 Groups estimate of the loss]. Please note that we will require an inspection of the alleged property damage in the presence of a representative of C3 Group Inc., so that we may determine the extent of the property damage.

[Doc. 49-8] at 2.

Plaintiffs argue that this rapid response from Mr. Amato constitutes bad faith: "Defendant rejected the Proof of Loss [two days after it was submitted], *effectively rejecting the entirety of Plaintiff's claim under the policy without a coverage determination*[.]" [Doc. 49] at 20 (emphasis added). This argument is facile. It is clear from the context that Defendant was not "rejecting the entirety of Plaintiffs' claim…without a coverage determination." *See id.* Mr. Amato was obviously saying that Defendant could not accept the proof of loss *at that time* because Defendant needed more time to investigate whether there was a covered loss. *See* [Doc. 49-8]. It is equally obvious from the letter that Defendant had every intention of continuing its investigation and, in fact, had not yet decided whether to pay the claim. *See generally id*. There is not even a suggestion that Defendant was "rejecting the entirety of Plaintiffs' claim" at that time. *See* [Doc. 49] at 20.

In any event, Defendant conveyed its decision to deny coverage on May 22, 2020, more than 30 days after receiving the Proof of Loss. *See* [Docs. 45-14, 45-17]. Was that a breach of the contract? Perhaps. But it was not bad faith. Nor was it a violation of NMSA § 59A-16-20 (requiring insurers to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been submitted by the insured).

Citing to the deposition testimony of Ms. Addus, Plaintiffs argue, "[E]ven though Defendant knew or should have known that hail caused damage to the property, it ignored any evidence to the contrary[7] (sic.), leading to a one-sided investigation." [Doc. 49] at 19. But Ms. Addus' testimony does not support that contention. She was never asked, nor did she testify, that Defendant ignored Plaintiffs' submissions. Ms. Addus testified that Defendant relied upon the Koontz report because "It's more reliable— the information retained (sic.) from the engineer is more reliable than the information from C3." [Doc. 49-5] at 16. Was she wrong? Perhaps she was. If she wrongfully denied coverage because she chose to rely on Mr. Koontz's report rather than the evidence Plaintiffs submitted, was that a breach of the contract? Perhaps it was. The jury will decide. But even if Defendant's decision to rely on the Koontz report was wrong, "[a] reasonable but erroneous position in the denial of a claim does not establish the elements of bad faith." *Salopek*, 446 F. Supp. 3d at 906 (citing *Jackson Nat. Life Ins. Co. v. Receconi*, 1992-NMSC-019, ¶ 59, 827 P.2d 118, 135).

Plaintiffs offer no evidence that Defendant's investigation failed to comply with Defendant's own standards or those of the industry. *See Hauff*, 755 F. Supp. 2d at 1148 ("It is not enough to assert that Safeco failed to act reasonably in this case. Mr. Hauff must identity Safeco's standards and show how they were inadequate."). Nor do they challenge Koontz's qualifications or expertise, although they suggest he is biased. They will have every opportunity at trial to impeach him and challenge his findings and conclusions. They have their own well-qualified expert on hail damage. If the jury determines that Plaintiffs' expert is more credible than Koontz,

---

[7] The Court assumes this was a typo and reads it to mean "any evidence contrary to the Koontz report." *See* [Doc. 49] at 19.

10

Plaintiffs will likely win on the breach of contract claim. But that does not mean that Defendant's reliance on the Koontz report was frivolous or unfounded.

### IV. Plaintiffs fail to show a genuine dispute of material fact that Defendant misrepresented the policy or failed to give a reasonable explanation for denying coverage.

Plaintiffs allege that Defendant knowingly misrepresented the cause of loss and the policy's coverage and exclusion provisions. [Doc. 49] at 15, 16. Plaintiffs also contend that Defendant's denial letter was unreasonable because it "contains no indication Plaintiffs still had policy coverage." *Id.* at 17. "An insurer does not deal fairly with an insured when the insurer fails to disclose to its insured the existence of an exclusionary provision contained in the insurance contract." *Salopek*, 446 F. Supp. 3d at 904 (internal citation and quotation omitted). This means an insurer "has a duty to provide an insured with a copy of the policy or some other documentation of same." *Id.* (further citation and quotation omitted).

The Court initially notes that Plaintiffs do not allege that they were unaware of or misunderstood any language in the policy. Rather, they assert that "Defendant misrepresented the *applicability* of [policy exclusions] to deny Plaintiffs' claim." [Doc. 49] at 16 (emphasis added). The Court also notes that Defendant's coverage-denial letter quoted the policy's applicable exclusions and explained which findings from the Koontz report supported those exclusions. [Doc. 45-14]. Even if Defendant's denial was in error, that does not amount to bad faith. *See Montoya,* 2019 WL 5457081, at *18–19. Therefore, the Court finds that Plaintiffs have failed to show that there is a genuine dispute of material fact on this point as well.

## CONCLUSION

This case comes down to a typical "battle of the experts." Each side has at least one qualified expert who will testify on whether Plaintiffs' property suffered hail damage. The jury will decide which expert is more credible and, in turn, whether Defendant breached the contract by denying coverage. The Court finds that Plaintiffs have failed to meet their burden of showing that there is sufficient evidence to sustain their claims as to bad faith or violations of the UIPA. As such, Defendant is entitled to judgment as a matter of law on Counts II and III.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that "Defendant Tri-State Insurance Company of Minnesota's Motion for Partial Summary Judgment" [Doc. 45] is hereby **GRANTED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**